[File No. 6452.]

GEORGE B. CUMMINGS, Alfreda Haugen, and Alfred Schmitz, Appellants, v. CITY OF MINOT, a Municipal Corporation; Ward County, a Municipal Corporation; W. J. Flannigan, as State Highway Commissioner of the State of North Dakota; and Minneapolis, St. Paul and Sault Ste. Marie Railway Company, a Corporation, Respondents.

(271 N. W. 421.)

Opinion filed February 2, 1937.

*Paul Campbell,* for appellants.

*O. B. Herigstad, R. W. Palda, C. E. Brace, P. O. Sathre, J. A. Heder, T. A. Thompson,* and *John F. Sullivan,* for respondents.

MORRIS, J. The plaintiffs seek to enjoin the construction of an overpass on Fourth Avenue Southeast in the city of Minot over the tracks of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company where these tracks intersect the avenue. U. S. Highway No. 2 passes along Fourth Avenue Southeast and crosses the railroad tracks at this point. The plaintiffs bring the action as abutting property owners and also as taxpayers. They appeal to this court from orders of the District Court granting a motion to quash a temporary restraining order previously issued and sustaining a demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

We will first consider the plaintiffs' contention as property owners. They allege that they own certain lots adjoining and fronting upon Fourth Avenue Southeast; that said avenue has been paved by the city of Minot and otherwise improved by the laying of sidewalks, gutters, and water and sewer mains; that the cost of said improvements has been assessed against the owners of adjoining property; that the plaintiffs own and occupy residences and homes upon their properties and that the plaintiff, Cummings, owns and operates upon his property a tin shop and awning and furnace business for which he has established a substantial trade; that the proposed overpass will occupy the street and highway as they now exist; that for the purpose of affording plaintiffs and other owners of adjoining property abutting on the avenue some form of access to their property and ingress and egress, the defendants will acquire additional property for highway purposes sufficient to enable the street to be widened on each side of the overpass in order to enable vehicles and traffic to pass around the approaches to the overpass to a point where it is sufficiently high

for the traffic to pass under it, and that the plaintiffs are damaged by being deprived of access to and from their properties except as is thus provided. Plaintiffs claim that they will be further damaged as abutting owners because they will be deprived of light and air, and their right to have the street and highway kept open at the grade as a thoroughfare.

It appears by the affidavit of the engineer of the state highway department, who is in charge of the proposed construction, that the plans contemplate a roadway thirty feet in width on the overpass and that the overpass will not occupy the full width of the street. It will consist of abutments of earth, concrete, and other material at the ends, and a bridge construction approximately twenty feet in height for that part which passes the property described in the complaint and crosses the railway. It further appears that the city of Minot has agreed to purchase an additional ten feet on each side of the street where additional space is needed around the abutments to permit ingress and egress to property along the street; that at the point where the overpass is to be constructed in front of the plaintiffs' property, the full width of the street will be available for traffic except as it may be interfered with by piers supporting the overpass; that the construction will permit the public to pass from north to south under the overpass, and from east to west under it and around the abutments but not across the railroad tracks; that in front of the plaintiffs' property the overpass will be higher than the buildings on such property.

The plaintiffs contend that the erection of the overpass will amount to a vacation of the street and that since no proceedings have been had to vacate the street, the injunction should issue. The facts do not support this contention. The main stream of traffic will pass along the street as before, except that it will be diverted to a higher level by the overpass. Traffic will also be permitted on most of the street on its original level, although it will, no doubt, be somewhat impeded by the abutments and supporting pillars of the structure. The overpass itself is a public structure to be used as a roadway. Its construction upon the street does not constitute an abandonment or vacation of the original street.

A more serious question is presented by the contention of the plain-

tiffs that the overpass will damage their abutting property by interfering with access to their property and with the light and air which the abutting property owners are entitled to enjoy. It appears from the complaint that the abutting property owners will suffer consequential damages by the erection in the street in front of their property of a structure higher than the buildings, bearing a roadway thirty feet wide and with supporting piers in the street sufficient in size and number to support the roadway and its anticipated traffic. Although access to plaintiffs' property will not be destroyed, it will be materially interfered with. In order to leave the plaintiffs' property and enter the main stream of traffic, the plaintiffs will be required to travel eastward for some distance beneath the overpass, thence around the east abutment and onto the highway.

Section 14 of the Constitution of North Dakota provides in part "private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for the owner, . . ." Prior to 1870 the constitutions of various states prohibited only the *taking* of private property for public use without compensation. In that year Illinois amended its constitution by adding the word *damaged*. Similar changes were made in a number of other states. Such a provision was made in the original constitutions of North and South Dakota when they became states. Under constitutions providing that private property shall not be damaged for public purposes without compensation, the question of how far this right extends has been discussed in many cases. In this case we are interested in whether an abutting owner whose light, air, and access will be interfered with but not entirely cut off by a public improvement erected in the street, is so injured as to be entitled to compensation under § 14 of our Constitution. The doctrine of damnum absque injuria as applied to property damaged but not taken by public use, has not been entirely abrogated by § 14. There are, undoubtedly, injuries which the property owner sustains by reason of the erection of public improvements for which he can maintain no action. Lewis, Em. Dom. 3d ed. § 366. Moreover, an injury arising from the improvement of a public street in a manner reasonably contemplated at the time of the dedication of such street cannot give rise to a cause of action, but an abutting property owner should be entitled

to recover for injuries arising from interference with his easements of light, air, and access when such interference is caused by the lawful use of the street in a manner which could not have been reasonably anticipated at the time of dedication, and for which damages have not been waived.

The rights of an abutting owner to ingress and egress and to light and air are private rights which he is entitled to exercise in and over the street in front of his premises. Any use of the street which materially impairs or destroys the enjoyment of these rights, causes a damage special and peculiar to the owner, different and distinct from an injury to the rights of the general public. It is generally held that an injury to the public right gives no right of action for damages arising from the lawful erection of a public improvement, but an abutting owner may suffer actionable injury which is special to him and for which he may sue for damages or seek an injunction. Williams v. Los Angeles R. Co. 150 Cal. 592, 89 P. 330. A change of street grade may constitute an actionable injury to abutting property. State v. Superior Ct. 167 Wash. 334, 9 P. (2d) 70. This rule, however, is subject to the limitation that the change of grade in order to be actionable must be one that was not within reasonable contemplation at the time of the dedication of the street. In McCandless v. Los Angeles, 214 Cal. 67, 4 P. (2d) 139, it was held that an abutting property owner's easement of ingress and egress to a street may not be taken away or substantially impaired for public purposes without just compensation. The court said: "It may be assumed and may not be denied that the use to which the city has put this portion of the street for a pedestrian subway for public use is a proper street use, but such assumption, deemed incontrovertible for the purposes of this case, does not answer the requirements of the Constitution. The plaintiff may nevertheless be damaged by reason of such a proper public use to which the street or a portion thereof may be put, just as the raising or the lowering of the grade in front of private property may be a legitimate public improvement, but, when the same causes special and peculiar damages to the abutting property owner, the Constitution must be obeyed."

The Supreme Court of the United States in Chicago v. Taylor, 125 U. S. 161, 31 L. ed. 638, 8 S. Ct. 820, in discussing the case of Rig-

ney v. Chicago, 102 Ill. 64, says: "The conclusion there reached was that under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character—that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate; but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover. . . . We concur in that interpretation. The use of the word 'damaged' in the clause providing for compensation to owners of private property, appropriated to public use, could have been with no other intention than that expressed by the state court."

In Pueblo v. Strait, 20 Colo. 13, 36 P. 789, 24 L.R.A. 392, 46 Am. St. Rep. 273, the court held that the building of a viaduct over railroad tracks in a public street which partially closed the abutting property to access by teams from the street, was such an extraordinary use as to entitle abutting property owner to maintain an action for damages.

It appears from the complaint that the structure about to be erected in the street will damage the plaintiffs by interfering with their special rights in the street and that such damage is one within contemplation of § 14 of the constitution. This being so, may the plaintiffs have an injunction, or must they wait until the structure has been erected and sue for damages? Our constitution does more than prohibit the taking or damaging of private property for public use without compensation. It also provides that the compensation shall *first* be made to or paid into court for the owner. In the case of Donovan v. Allert, 11 N. D. 289, 91 N. W. 441, 58 L.R.A. 775, 95 Am. St. Rep. 720, the plaintiff sought an injunction against a telephone company claiming that it was about to erect telephone poles and wires on the street in front of plaintiff's dwelling thereby interfering with his ingress and egress, and light and air. The telephone company contended that the plaintiff was not entitled to an injunction because he could resort to an action for damages and thereby be fully compensated for whatever damages he might suffer. The court disposes of this contention by saying: "The defendants are proceeding to damage the plaintiff's property without first complying with a man-

datory provision of the constitution. That provision of the constitution is peremptory that property taken or damaged for public use shall first be paid for, and the legislature has also enacted that payment must precede the taking or damage, and has provided adequate means for establishing the amount of such damages. The taking or damaging of private property for public use without the owner's consent is deemed so serious that payment therefor is a prerequisite to attempting to do so. The defendants have the ultimate right, under their franchise, to use the street for telephone purposes; but payment of damages, actual or consequential, to plaintiff's property, must be first attended to. This does not mean that it may first be appropriated, and paid for at the end of a suit for damages, but means that payment must precede the taking or damaging."

"Section 14, of the Constitution of North Dakota, was copied literally from § 14, Art. 1, of the Constitution of California adopted in 1879." Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838. The Supreme Court of California has dealt with the right of an abutting property owner to an injunction protecting his rights of ingress and egress until compensation had first been made for damages resulting from a proposed public improvement in Wilcox v. Engebretsen, 160 Cal. 288, 116 P. 750; Schaufele v. Doyle, 86 Cal. 107, 24 P. 834, and Geurkink v. Petaluma, 112 Cal. 306, 44 P. 570. All of these cases sustain the proposition that the right of an abutting property owner to ingress and egress cannot be destroyed or impaired without just compensation having first been made and that such owner is entitled to enjoin the work until the requirements of § 14 have been met.

In Becker County Sand & Gravel Co. v. Wosick, 62 N. D. 740, 245 N. W. 454, this court said: "Section 14 of the Constitution was intended to guarantee to an owner of property the full right of ownership including possession and enjoyment rather than a right to redress for wrong committed in taking his property away from him. The constitutional mandate is not satisfied by the ascertainment of the amount of compensation and making the same a charge upon a state or municipal fund for which the credit of the state or the municipality is pledged. Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838, supra. The constitution guarantees to the owner

something more than a right to recover judgment for the damages caused by the taking of his property or a recovery of the property itself after it has been taken; it guarantees that his property shall not be taken or damaged even for a necessary public use 'without just compensation in money being first made to, or paid into court for, the owner.' Martin v. Tyler, supra. See also 20 C. J. pp. 835–839."

In Brown v. Seattle, 5 Wash. 35, 31 P. 313, 32 P. 214, 18 L.R.A. 161, it was held that a change of an established grade of a street may constitute a damage to the property of an adjoining owner for which compensation must be made or paid into court. Emphasis is laid upon the provision of the Washington Constitution that compensation shall first be made and since that was not done it is held that the lower court was justified in issuing an injunction.

In the case of State ex rel. Moline v. Driscoll, 185 Wash. 229, 53 P. (2d) 622, the Supreme Court of Washington dealt with facts analogous to those presented here. In that case the appellants, abutting owners of a lot on which a hotel was situated, sought a decree restraining officials of the State Highway Department and the City of Pasco from proceeding with a proposed improvement on the street in front of the appellant's property. This improvement consisted of an undergrade crossing at a street intersection. The street is eighty feet wide in the center of which it was proposed to make a cut twenty-four feet in width about two blocks long extending one block each way from plaintiff's premises and descending to a maximum depth of fifteen feet. The cut would be protected on each side by an iron fence leaving twenty-six and a half feet of street on each side of the undercrossing. The plaintiffs enjoy the benefit of a concrete sidewalk fourteen feet in width in front of their hotel. By the proposed improvement the sidewalk would be narrowed to six feet, and the pavement at grade to twenty feet. The court reached the conclusion that since compensation had not been made, the plaintiffs were entitled to have the work on the street restrained until the question of any damages which might result to the appellants therefrom was determined.

In Arkansas State Highway Commission v. Partain (Ark.) 90 S. W. (2d) 968, it was held that adjacent property owners were entitled to enjoin the construction of a viaduct by the State Highway Commission on a street in the city of Van Buren until the pro-

visions of the constitution regarding payment should be complied with. It was said: "It is insisted that the resolution of the state highway commission and the act of the General Assembly above quoted show the intention and the ability of the highway commission to pay these damages. This is not sufficient. The property owners cannot be required to accept a claim for unliquidated damages as compensation for their property. There is authority in the law whereby the court, in which the condemnation is prayed, may require a deposit in court of a sum of money sufficient to pay any and all damages which may reasonably be assessed; and the deposit must be in the registry of the court where the damages will be assessed, which in this case is the circuit court of Crawford county. This deposit is in effect the payment and an advance which the Constitution (Art. 2, § 22) requires as a condition precedent upon which the property must be taken."

An injunction against changing the grade of a street without compensation for the damage caused thereby having first been made, was held to be proper in McElroy v. Kansas City (C. C. Mo.) 21 F. 257. In the opinion written by Justice Brewer, it is said: "When the defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with. This principle lies at the foundation of the multitude of cases which have restrained the taking of property until after the payment of compensation, for in all those cases the legislature has placed at the command of the defendant means for ascertaining the value of the property. In those cases the courts have seldom stopped to inquire whether the value of the property sought to be taken was little or great, whether the injury to the complainant was large or small, but have contented themselves with holding that as the defendant had full means for ascertaining such compensation, it was his first duty to use such means, determine and pay the compensation, and until he did so the taking of the property would be enjoined."

The right of an abutting property owner to an injunction against a change of grade when compensation had not been made, has been.

upheld in Alabama in New Decatur v. Scharfenberg, 147 Ala. 367, 41 So. 1025, 119 Am. St. Rep. 81. On rehearing it was said that it is the privilege and duty of the city to grade the streets or change the grade so as to make them safe and convenient. "But in the exercise of this privilege and duty, if the property of an abutting owner is or will be injured thereby, clearly under our constitutional provision and adjudged cases he may restrain the further prosecution of the improvement of the street by the city until just compensation is paid to him for the injury done or about to be done to his abutting property."

In Searle v. Lead, 10 S. D. 312, 73 N. W. 101, 39 L.R.A. 345, an abutting property owner was held to be entitled to an injunction against change of grade where compensation for damage caused thereby had not been made. The court said: "The words 'or damaged' were, without doubt, added to the usual provisions contained in earlier constitutions for the purpose of extending the remedy to incidental or consequential injuries to property, not actually taken for public use, in the ordinary acceptation of that term; and the same was adopted by the people with this express guaranty that just compensation should be made for property so taken or damaged for public use. And there is the further express guaranty that this compensation shall be paid before the proposed improvement can be made, or, in the language of the constitution, 'possession is taken.' The ascertainment and payment of damages that may be caused is a condition precedent to the right of the municipality to proceed. . . . The contention that the failure to allege in the complaint that the plaintiff would sustain irreparable injury, or that the defendant was unable to respond in damages, was fatal to plaintiff's right to an injunction, is not tenable, as applied to this class of cases. Plaintiff's right to an injunction does not depend upon the ability or the inability of the defendant to respond in damages, but upon the fact that plaintiff is entitled to be paid such damages as she may sustain before the city can lawfully proceed to damage her property."

For general authority on injunction as a proper remedy to protect the rights of ingress and egress from a street to abutting property, see note 35 L.R.A.(N.S.) 193.

The case of King v. Stark County, 66 N. D. 467, 266 N. W. 654, has been cited. That case involved the building of an overpass on a section line, and in the opinion it was said: "The plaintiff cites a number of cases dealing with the change of grade of a city street and the right of abutting owners to compensation from the municipality. This is an entirely different proposition and not involved here."

As taxpayers the plaintiffs allege that the county of Ward, in which the city of Minot is located, has agreed and its officers and agents threaten and are about to pay from its road and bridge fund the sum of $14,000.00 for the purpose of enabling the city of Minot to secure additional property and rights, and to pay damages necessary to the construction of the overpass, and that moneys cannot be used from said fund for said purpose. They base their contention on § 1946, 1925 Supplement to Compiled Laws. An examination of this section discloses that as originally enacted the fund could only be expended for road machinery, grading, ditching, surfacing and dragging highways. By chapter 31, § 13 of the Laws of 1917, the original section was amended by adding thereto, "or the whole of said sum or any part thereof may be expended in co-operation with the state highway commission." In this case it appears that the construction complained of will be built by or under the direction of the State Highway Commissioner upon a duly designated U. S. Highway with funds procured from the Federal Government. In order that additional right of way may be procured, the defendant railroad is contributing $10,000.00 and Ward county $14,000.00. From the facts pleaded in the complaint, it does not appear that § 1946 will be violated. Such facts as are pleaded tend to indicate that the money obtained from the county road and bridge fund will "be expended in co-operation with the state highway commission."

Plaintiffs also contend that the existing indebtedness of the city of Minot is now in excess of the limitation of the indebtedness provided by § 183 of the state constitution; that the moneys provided by the defendant railroad and the county for purchasing right of way and paying damages will be exhausted in the acquisition of the additional right of way; that there will be no money left therefrom with which to pay the plaintiffs and others like situated for the damages to their property by reason of the construction of the overpass; and

■■■■■■■■■

that the liability for such damages constitutes an indebtedness within the provisions of § 183, and since the city has already exceeded the constitutional limit of indebtedness, the erection of the overpass and the damage caused thereby will result in further increasing the city's debt beyond its constitutional limit. No amount of damage is alleged. The damages to which the plaintiffs may be entitled in this case are wholly contingent. The amount thereof may be great or small. The city may have available funds with which to pay them in cash. Assuming for the purpose of deciding this point, that the city of Minot is now indebted in excess of the limitations prescribed by the constitution, the complaint does not state facts sufficient to entitle the plaintiffs to injunctive relief upon that ground. Bismarck Water Supply Co. v. Bismarck, 23 N. D. 352, 137 N. W. 34, McQuillin, Mun. Corp. (2d Ed.) § 2374; Gray, Limitations of Taxing Power & Pub. Indebtedness, § 2091.

The complaint states a cause of action for injunctive relief based upon § 14 of the Constitution of North Dakota. The court erred in sustaining the demurrer and in quashing the temporary restraining order.

Reversed and remanded for further proceedings in conformity with this opinion.

CHRISTIANSON, Ch. J., and BURR, NUESSLE and BURKE, JJ., concur.