**Lillian Elaine CHANDLER and A. J. Chandler, Plaintiffs and Appellants,**

v.

**Walter R. HJELLE, North Dakota State Highway Commissioner, Defendant and Respondent.**

No. 8066.

Supreme Court of North Dakota.

Jan. 27, 1964.

 

Vogel, Ulmer & Bair, Mandan, for plaintiffs and appellants.

Helgi Johanneson, Atty. Gen., Jon R. Kerian, Sp. Asst. Atty. Gen., Bismarck, for defendant and respondent.

MORRIS, Chief Justice.

This proceeding involves a taking by the State of North Dakota through its agency, the State Highway Commissioner, of two parcels of land which, since 1945, were parts of a larger tract used, owned and operated as an airport by the appellants. Along the section line immediately south of the airport ran a highway bearing the numbers U.S. 2 and U.S. 85. At the time these proceedings were commenced, the highway right of way over which U.S. 2 and U.S. 85 ran was 100 feet wide and extended 50 feet on each side of the section line. On April 6, 1960, the Highway Commissioner made offers and deposited with the Clerk of the District Court of Williams County, pursuant to Section 14 of the North Dakota Constitution, sums of money offered for two tracts of land approximately 350 feet wide, adjacent to the highway, across the south portion of the larger Chandler tract. The tracts for which the offers were made were designated as Parcel No. 13, for which the sum of $3,980 was deposited, described in the judgment appealed from as follows:

"The south 350.0 ft. of the SE¼SW¼ of Sec. 21, Twp. 154 N., Rge. 101 W., 5th P.M., excepting all that portion previously acquired for public highway right of way and all that portion lying within 33 feet of the section line.

"Tract contains 8.93 acres, more or less.

"Also including all right of access, being the right of ingress to and egress from the remaining property to and from the highway right of way, except that the abutting owner shall reserve the right of access 30 feet wide at one point, the location of said points to be designated by the State Highway Com-

missioner as shown on the right of way plat."

and Parcel No. 16, for which $9,500 was offered, described in the judgment as follows:

"All that portion of the W½SE¼ of Sec. 21, Twp. 154 N., Rge. 101 W., 5th P.M., lying within a strip of land of various widths, located on both sides of and measured at right angles to the following described highway centerline as surveyed and staked:

"Beginning at a point on the quarter line 200.0 feet north of the southwest corner of said SE¼ where said strip is 310.0 ft. wide, lying 150.0 ft. on the northerly side and 160.0 ft. on the southerly side of said highway centerline; thence running easterly along a 300.0 ft. spiral of a 1°18′ curve to the left 297.9 ft. to a point where said strip changes to 335.0 ft. in width, lying 175.0 ft. on the northerly side and 160.0 ft. on the southerly side of said centerline; thence along said 1°8′ curve 877.1 ft. to a point where said strip changes to 300.0 ft. in width, lying 150.0 ft. on each side of said centerline; thence along said 1°8′ curve until said strip crosses the westerly property line of an irregular tract; said lines being described as follows:

"Beginning at a point on the north right of way line of State Highway No. 2 and 85 as it exists today, said point lying 1349.92 ft. west and 50.0 ft. north of southeast corner of said Section 21; thence running N 160°00′ W to a point; thence N 6°08′E, excepting all that portion previously acquired for public highway right of way and all that portion lying within 33 feet of the section line.

"Tract contains 9.25 acres, more or less.

"Also including all right of access, being the right of ingress to and egress from the remaining property to and from the highway right of way, except that the abutting owner shall reserve the right of access 30 feet wide at one point, said point to be designated by the State Highway Commissioner, as shown on the right of way plat."

The Chandler property had a frontage on the old highway of approximately one-half mile or 2,640 feet. Parcel No. 13 is a rectangular tract consisting of the west half, or 1,320 feet, of that frontage and extending North 300 feet. Parcel No. 16 immediately joins Parcel No. 13 on the east, and extends eastward along the north line of the old highway right of way approximately 300 feet with a width of 300 feet; thence the parcel continues in a curve in a northeasterly direction something over 900 feet farther. The two parcels thus taken deprive the Chandler tract of a frontage of 2,640 feet on the old highway. Witnesses for both parties classify the tract, which is located about two miles west of the City of Williston, as commercial property.

The old highway is designated as a frontage road for property lying immediately south of it with available ingress and egress to and from several business establishments located south of the old highway. No frontage road is provided for the Chandler property.

Upon appeal to the district court the question of damages was tried to a jury which found direct compensation for the right of way taken $14,544, severance damages to property not taken $3,456, making a total of $18,000, which was $480 less than the deposit. Judgment was entered in the district court against the appellants for $480, plus interest. From that judgment Lillian Elaine Chandler and A. J. Chandler appeal and seek a new trial on the ground that the court erred in refusing to give certain requested instructions to the jury and in giving specified instructions which the appellants contend were erroneous.

This case was consolidated for trial with other cases involving tracts of other owners

that were being taken for highway right of way. One of these tracts, referred to in the instructions as the Hicks tract, is not involved in this appeal.

The evidence shows that the right of way being taken is for what is known as a controlled-access highway or facility, that no frontage road will be constructed, and that the only access provided is at two points.

Section 24–01–01.1, NDCC, contains these pertinent definitions:

"9. 'Controlled-access facility' shall mean a highway or street especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a controlled right or easement of access, light, air, or view by reason of the fact that their property abuts upon such controlled-access facility or for any other reason."

"35. 'Right of access' shall mean the right of ingress to a highway from abutting land and egress from a highway to abutting land."

"18. 'Frontage street or road' shall mean a local street or road auxiliary to and located on the side of an arterial highway for service to abutting property and adjacent areas and for control of access."

Controlled-access facilities were first provided for in Chapter 177, Session Laws N.D.1953, which is now incorporated in Chapter 24–01, NDCC. Section 24–01–30 gives highway authorities of the State, counties, and municipalities of North Dakota, authority to establish such facilities and, among other things, provides:

" * * * Said units may regulate, restrict, or prohibit use of such controlled-access facilities by the various classes of vehicles or traffic in a manner consistent with the definition of a controlled-access facility."

Section 24–01–31 provides:

"Design of controlled-access facility.— The highway authorities of the state, or any county, or municipality are authorized to so design any controlled-access facility and to so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended. * * * No person shall have any right of ingress or egress to, from or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, *upon such terms and conditions as may be specified from time to time.*" (Italics supplied.)

Section 24–01–32 provides for the acquisition of property rights for the purposes of Chapter 177 of the Session Laws of North Dakota for 1953. Such acquisition may be by condemnation. All property rights so acquired shall be in fee simple, except the acquisition of lands shall not include rights or interests in oil, gas or fluid minerals underlying the lands.

Section 24–01–35 authorizes highway authorities "to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads and streets" in connection with controlled-access facilities.

Each notice to the property owners given pursuant to Section 14 of the North Dakota Constitution includes in the taking all right of access except that the abutting owners reserve a right of access 30 feet wide on each parcel at a point to be designated by the Highway Commissioner as shown on the right of way plat. The testimony shows that by agreement of the parties the locations of the points of access were changed so that there is no access to Parcel No. 16, and that as to Parcel No. 13, a 30 foot access was provided near the east end of that parcel and a 15 foot access was provided at the extreme west end of that parcel to which an adjoining and additional 15 feet of access was provided over the property of the landowner immediately to the west so that there would be a 30 foot access, 15 feet

of which was from and over the land of the appellants and 15 feet from and over the land adjoining Parcel No. 13 on the west. These changes appear on a right of way plat, a copy of which is filed as an exhibit in the case.

It will be noted that the statutes to which we have referred with respect to non-access highways provide for the condemnation of the rights of access of abutting property owners and that the notices given to the Chandlers regarding the parcels of land involved advised them of the taking of the rights of access and the exception of the two points specifically noted. This Court has held that the rights of an abutting owner to ingress and egress are private rights which cannot be destroyed or impaired without just compensation. Cummings v. City of Minot, 67 N.D. 214, 271 N.W. 421. Other courts have denominated the right of access as a property right. Petition of Burnquist, 220 Minn. 48, 19 N.W.2d 394; People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799; Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N.W.2d 76; Nichols on Eminent Domain, Section 5.72(1).

In this case the Chandlers had a right of access to the old highway at the time they acquired the property in question. The taking of Parcels No. 13 and No. 16 completely destroyed the access to the old highway which was a conventional road along the section line the right of way for which had already been widened from the original easement of 66 to 100 feet. Such a highway is sometimes termed as a land-service road as contrasted with a controlled-access highway. The access reserved to the Chandlers is to the new highway, and affords ingress and egress to all traffic lanes of the new highway at two points.

In connection with the court's instructions on severance damages the court gave the following paragraphs, the italicized portions of which are specified as erroneous:

"You are instructed that the highways belong to the state, and the state, acting in its sovereign capacity, may grade and improve the highways within the limits of its right-of-way as in its judgment may be necessary for the convenience and safety of the public. Thus, the state may prevent access to a public highway at certain places and doing so does not constitute damage to private property for which compensation may be awarded. *An abutting owner has the right of reasonable ingress or egress to the highway upon which his property abutted prior to the taking, subject to the paramount right of the state to improve and control the highway in the interest of the public. If the available access of the landowner to public highways is reasonably adequate, although less convenient and more circuitous after the making of the improvement, the Jury cannot award damages caused solely by the adverse effect of the access available to him after the taking.* Where, however, as in the case of the Hicks tract, no direct access is afforded to the remaining property abutting the highway upon which the property fronted before the taking or upon the new highway, the total lack of direct access in the future to either of such highways may be considered by the Jury as an element of damages if the Jury should find that the lack of such access adversely affected the market value of the remainder.

"Annoyances and inconveniences, if any, other than the restriction of future access to the remaining property, which are of such a nature as to impair the fair market value of the remaining portion of the property and which are caused by the character or operation of the improvement and which are different in nature from those suffered by the general public are proper elements for the jury to consider in determining the amount of compensation to be awarded to the aggrieved landowner."

.Black's Law Dictionary, Fourth Edition, defines the phrase "subject to" as "liable, subordinate, subservient, inferior, obedient to." Webster's International Dictionary gives "subordinate" and "inferior" as synonyms for the word "subject." In State v. Divide County, 68 N.D. 708, 283 N.W. 184, this Court, in considering tax liens on real property, states:

"By the term 'paramount' is meant superior, pre-eminent, the highest in rank or nature."

This is in accord with the definition in Black's Law Dictionary, Fourth Edition, "higher; superior; pre-eminent; of the highest rank or nature."

The impact of the instruction under consideration must be weighed in the light of the fact that the State is not exercising its right under the police power to regulate the use of the right of way upon which it is building a highway, as it does have a paramount right to do, but is taking under the power of eminent domain, forever, all right of access of the Chandlers' commercial property along a frontage of approximately one-half mile with the exception of a reserved right of access at two points. No frontage road is provided. The Chandlers at their own expense are left to provide their own approaches to the two points of ingress and egress from all other points along their frontage.

■ The State undoubtedly has the right under the police power to regulate and control traffic on its highways in the interest of safety and to restrict in a reasonable manner access to the highway from abutting property, having due regard for the right of the owner to reasonable and convenient ingress and egress. The necessity for and the reasonableness of regulations may change from time to time, depending upon shifting conditions arising from the use of the abutting property and changes in mode, customs and conditions of travel, but this fact does not augment or restrict the right of eminent domain by which the State may take or damage abutting property subject to the owner's right to receive just compensation for that which is taken or damaged.

■ The owner of property abutting on a highway has a property right of access; he does not have an absolute and unrestricted right to ingress and egress. In Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680, it is said:

"It seems fairly well settled that, while access may not be entirely cut off, an owner is not entitled, as against the public, to access to his land at all points between it and the highway. If he has free and convenient access to his property and the improvements on it and his means of ingress and egress are not substantially interfered with by the public he has no cause for complaint."

In Hillerege v. City of Scottsbluff, supra, it is said that the measure of the property owner's right is reasonable ingress and egress under all circumstances. People ex .rel. Department of Public Works v. Murray, 172 Cal.App.2d 219, 342 P.2d 485, contains extensive quotations from approved instructions wherein it is said:

"Although owners of real property abutting upon an existing highway have as an easement or appurtenance to such property the right of access to and from the highway, this does not mean that an owner of abutting property is entitled, as against the public, to access at all points in the boundary between the land and the highway.

"Such owner is entitled only to reasonable and convenient access to his property, considering all the uses to which the property is adapted and available."

This instruction is also quoted in Reid's Branson Instructions to Juries, Volume 3A, Section 1629, page 390. The foregoing case also holds that the extent of impairment is a jury question, citing People v. Sayig, 101 Cal.App.2d 890, 226 P.2d 702.

■ The correctness and adequacy of instructions must be determined upon the facts in evidence in the case in which they are given and the law applicable to those facts. In this case no mention is made in the instructions of the fact that the highway to be constructed is a controlled-access highway, and no mention is made of the statutes authorizing the construction of such highways or the acquisition of the right of way therefor. When viewed in the light of this situation it is our conclusion that the challenged instruction is erroneous, particularly when considered in connection with its context as is shown by the two paragraphs above-quoted. Particularly subject to misconception on the part of the jury is the statement in the challenged instruction that the right of the abutting owner to reasonable ingress and egress is subject to the paramount right of the State to improve and control the highway in the interest of the public. This statement would tend to mislead the jury as to the relative rights of the State and the abutting owners. The right of the abutting property owner to reasonable ingress and egress to the highway upon which his property abutted prior to the taking is a property right which is protected by Section 14 of the Constitution and cannot be taken or damaged without just compensation. We have considered the whole of the instructions pertaining to severance damages and find nothing therein which corrects or explains the statement under consideration in a manner that would tend to correct or mitigate the effect of the error. It is therefore prejudicial and reversible error.

■ With reference to market value, the court instructed the jury as to the meaning of the term in substantially the words of the definition contained in Section 24–01–01.1, paragraph 23, and continued:

"In determining market value it is proper to consider such adaptability of the interest taken for purposes other than that for which it is used at the time of taking as will in reasonable probability affect its present value. While it is proper to consider the adaptability of the interest taken for purposes other than that for which it is used at the time of taking as will in reasonable probability affect its present value, this does not entitle the owner to base value or damages on remote, speculative, uncertain or merely possible use. *In this connection, compensation may be calculated upon the basis of the most advantageous and valuable use of the property, having regard to the existing business or wants of the community or such as may be reasonably expected in the immediate future.*

"*Elements affecting value that depend upon events which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide to ascertainment of value.*" (Italics supplied.)

The italicized portions of these instructions are challenged in two separate specifications. The only possible warranted criticism is in the use of the phrase "immediate future." That phrase was used in similar context by the Supreme Court of the United States in Boom Company v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206 (1878). The Supreme Court of Washington, in Chicago, M. & St. P. Ry. Co. v. Alexander, 47 Wash. 131, 91 P. 626, in referring to that case, said:

"The words 'immediate future,' advisedly used, contemplate that the especial use must be valuable, practical, and available within a reasonable time."

When the instructions regarding market value are considered as a whole, they do not appear to be misleading. Therefore under the circumstances, while the use of the words "immediate future" in connection with instructions on market value in eminent domain proceedings is not to be commended, we cannot say that it constituted reversible error.

■ The last paragraph of the challenged instructions above-quoted is a quotation from our opinion in City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372, and is not erroneous.

We would point out that the United States Supreme Court has said, in Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, that:

"Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held."

To the same effect is People v. Ocean Shore R. R., Inc., 32 Cal.2d 406, 196 P.2d 570, 6 A.L.R.2d 1179.

■ The appellants specify as error the refusal of the court to give eight requested instructions. The appellants do not discuss these requests separately but state that the basic question involved is whether and to what extent the landowner whose land fronts on an ordinary highway and is commercial property is entitled to compensation for loss of access rights of the owners of the remaining abutting property. We have examined these requested instructions and find that although they contain some general statements of law that are correct, they also contain other statements that are ambiguous or erroneous. While these requests point up the appellants' general contentions with respect to the rights of the abutting owners to ingress and egress, they are not stated in language that obligated the trial court to include them in his instructions to the jury, nor was the refusal to give them prejudicial error. The trial court is not bound to revise and restate requested instructions that are not presented to him in proper form and which mingle correct statements of the law with those that are incorrect or ambiguous. Neither are we impelled by such a presentation to approve or criticize them in detail.

Because of the prejudicial error that we have heretofore pointed out in the instructions that the court gave the jury regarding the paramount right of the State to improve and control the highways in the interest of the public, to which the right of the abutting owner to reasonable ingress and egress was erroneously stated to be subject, the appellants were deprived of a fair trial with respect to the determination of damages. A new trial is therefore granted.

MORRIS, C. J., and STRUTZ, ERICKSTAD, BURKE and TEIGEN, JJ., concur.