UNITED POWER ASSOCIATION and
Cooperative Power Association,
Plaintiffs and Appellees,

v.

Harvey J. HELEY, Shirley Heley, Raymond Jelinek and Mary Ann Jelinek,
Defendants and Appellants,

and

Kenneth Theodore Frolek, Dexter Township, Richland County, Liberty Grove Township, R.S.R. Electric Cooperative, Inc., Lincoln State Bank, Hankinson, North Dakota, Dome Pipeline Corporation, State of North Dakota, United States of America acting through the Farmers Home Administration, U.S. Department of Agriculture, Anastasia C. Kaiser, Dwaine C. Kaiser, Farimont Township, Federal Land Bank of St. Paul, Claire J. Hermes and Evelyn C. Hermes, Defendants.

Civ. No. 9479.

Supreme Court of North Dakota.

March 15, 1979.

As Modified On Denial of Rehearing
April 4, 1979.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, and Ryan & Ryan, Aitkin, Minn., for plaintiffs and appellees; argued by John D. Kelly, Fargo.

Jos. A. Vogel, Jr., Mandan, for defendants and appellants.

SAND, Justice.

Defendants appealed from the judgment in an eminent domain action before the Third Judicial District Court, Richland County. As error, defendants asserted the refusal of the district court to allow evidence of consequential damages to their property resulting from the placement of power transmission towers and lines on abutting property.

Raymond and Mary Ann Jelinek [Jelineks] and Harvey and Shirley Heley [Heleys] are the appellants in this case and were among a number of Richland County landowners involved in an eminent domain proceeding initiated by United Power Association and Cooperative Power Association for the placement of a power transmission line across the landowners' properties.

Heleys own the Southeast Quarter (SE ¼) of Section 20 and the West Half of the Northeast Quarter (W ½ NE ¼) of Section 29. The Jelineks owned the Northeast Quarter (NE ¼) of Section 28 and the Northwest Quarter (NW ¼) of Section 26. All four pieces of property are located in Township 131, Range 51, Richland County.

Originally the North Dakota Public Service Commission designated the transmission line to follow the quarter line on the west side of the SE ¼ of Section 20 and the NE ¼ of Section 29. The line was to then make a 90° turn east and follow the quarter line on the south side of the NE ¼ of Section 29, and the N ½ of Sections 28, 27, and 26. Thus, the transmission line was to follow the west side of both tracts of the Heley property, turn east, follow the south side of the W ½ NE ¼ of Section 29, owned by the Heleys, and continue east, following the south side of both tracts of property owned by the Jelineks. The towers of the transmission lines were to be located half on the Heley and Jelinek properties and half on abutting properties owned by Ben Frolek, James and Jerry Hruby, and Arnold and Kenneth Jentz [Frolek, et al.].

As neither the Heleys nor the Jelineks signed an easement for the transmission line, condemnation proceedings were necessary and a trial was set for December 1977.

Prior to the date set for trial, Frolek, et al., agreed to have the transmission line moved from the quarter line routing along the east-west quarter line of Sections 29, 28, and 26 onto their adjoining properties. This agreement was approved by the North Dakota Public Service Commission and the line was adjusted accordingly. Consequently, no transmission facilities were or would be located on the Jelinek property, nor were or would any be located on the south side of the W ½ NE ¼ of Section 29, owned by the Heleys. The transmission right of way, however, was to extend approximately 80 feet either side of the center of the line to allow access for the construction and maintenance of the line. As a result, an approximate one-half-acre easement over the corner of the NW ¼ of Section 26 and slightly less than a one-acre easement over the corner of the NE ¼ of Section 28, had to be acquired from the Jelineks, although neither any towers nor any part of the transmission line would be located on or over their property. No easement was required from the Heleys for the south side of the W ½ NE ¼ of Section 29, however, the transmission line and towers remained on the north-south quarter line of the SE ¼ of Section 20 and the W ½ NE ¼ of Section 29, and easements were required over those properties.

The jury awarded the Heleys $7,541 for damages to their property located within the easement right of way, and $8,038 for severance damages to the remainder of their property. The Jelineks were awarded $858 for the taking of the "corner" easements and $1,274 for severance damages.

At trial, the Heleys and Jelineks unsuccessfully sought to introduce evidence of consequential damages resulting from the transmission line and towers located on the Frolek, et al., properties. The appellants then made an offer of proof consisting of testimony by Harvey Heley and Raymond Jelinek, along with an appraiser and an aerial sprayer, that the transmission line would interfere to some extent with crop spraying over the appellant's properties resulting in a reduction of the land's market value. The trial court denied admission of the evidence. The Jelineks and Heleys appealed, contending the trial court erred by refusing to admit the testimony (evidence) presented in the offer of proof.

The issue presented is whether or not a landowner is entitled to recover consequential damages for the diminution in the value of his land not taken resulting from the acquisition and use of adjoining land of other persons for the construction of transmission lines.

■ Consequential damages can generally be defined as those arising from injuries to property not actually taken, caused by the construction of a public improvement. *Little v. Burleigh County*, 82 N.W.2d 603 (N.D.1957).

We note the appellants did not contend the consequential damages for which they seek compensation arose as a result of the taking of easements over their properties. Their offer of proof related to damages suffered to their properties as a result of the construction of transmission facilities on adjoining properties of others.

Nichols on Eminent Domain, § 14.4 at 14–431, recognized a distinction between the seeking of consequential damages as the result of the taking of one's own property, and the seeking of consequential damages arising from a public improvement on the property of others:

"In the former case, the mere fact that there has been a taking entitles the owner to recover for all damages to his remaining land (whether special or shared by the public generally), provided they flow from the taking, since he is constitutionally entitled to be made whole for all injuries resulting from the taking of his land. But when there is no taking, he is entitled only to such damages as the constitution or statutes provide, and as the damages usually provided for are held to be only those which are special and peculiar, the mere fact that an owner is entitled to recover such damages is no ground for allowing damages of a different character, although resulting from the construction of the same work. When, however, a form of damage comes within the constitutional provision only when it passes a certain limit, if it has passed the limit the owner is entitled to recover for all the damage from this cause (and not merely so much as is in excess of what could be inflicted without compensation.) To draw the line in such a case would not be practicable."

■ Thus when a landowner seeks consequential damages as the result of a taking of a part of his property, the general rule is that just compensation does not include diminution in the value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking, at least where it is possible to separate the damages caused to the remainder of the owner's tract by the use of the portion taken, from the damages caused by the similar use of adjoining property taken from others. *Campbell v. United States*, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924). See also, Annot., 59 A.L.R.3d 488 (1974).

Some courts have created somewhat of an exception to the above rule stating that just compensation includes diminution in the value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking, where the

use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put. *United States v. Pope & Talbot, Inc.*, 293 F.2d 822 (9th Cir. 1961). See also, Annot., 59 A.L.R.3d 488 (1974).

Appellants have not contended, nor do we conclude that it is impossible to separate the element of consequential damages to the remainder area due to the easement taken over their property from the consequential damages due to the use of land taken from Frolek, et al. for the same project. See, *Public Service Electric & Gas Co. v. Oldwick Farms, Inc.*, 125 N.J.Super. 31, 308 A.2d 362 (1973); *cert. denied* 64 N.J. 153, 313 A.2d 213. As stated by the New Jersey court at 308 A.2d 365:

"While it is apparent that the transmission lines which transverse defendant's property are physically an 'integral and inseparable part' of the total project, we do not find that that fact requires a departure from the rule enunciated in *Campbell v. United States*, above. Here, as in *Campbell*, the damage to defendant's remaining lands caused by the fact that the aerial easement for the transmission lines cross a small corner of its property are readily separable from the damage to the remaining tract which may be attributed to the existence of the transmission towers on adjoining lands belonging to others. The principal distinction between the damages is that the existence of the transmission lines over a corner of defendant's property could have very little effect on the value of the remaining tract as a whole, while the existence of the transmission towers on adjoining property could be regarded as having the effect of making the entire remaining land less desirable for purchase by one interested in developing."

The appellants argued they are entitled to consequential damages to the remainder of their lands, not on the basis of a "taking," but that such remainder was "damaged" by the placement of the transmission towers and line on adjoining property.

Section 14 of the North Dakota Constitution provides, in pertinent part:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. . . ."

Section 32–15–22 of the North Dakota Century Code has defined the assessment of consequential damages. The pertinent portion of that statute states:

"The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages."

This court has held on a number of occasions that § 14, N.D.Const., and subsection (3) of § 32–15–22, NDCC, provide for the award of consequential damages not only when property is taken for a public use, but also when it is damaged by a public use. *Northern Pacific Railway Co. v. Morton County*, 131 N.W.2d 557 (N.D.1964); *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808 (1942); *King v. Stark County*, 67 N.D. 260, 271 N.W. 771 (1937).

■ The question of whether or not a landowner is entitled to consequential damages under § 14, N.D.Const., and § 32–15–22, NDCC, is not limited, however, by a determination that the landowner's property has been damaged in terms of a decrease in market value, but also the damage must be a type which is compensable. As summarized in 29A C.J.S. *Eminent Domain*, § 111:

"Constitutional or statutory provisions for compensation for property damaged or injured are not intended, however, to reach every possible injury that may be occasioned by a public improvement, and not all damage or every diminution in value of property caused by a public improvement entitles the owner to recover. Depreciation in value alone will not sustain a claim for damages; it must result from a cause which the law regards as a

basis for damages; and it is generally held that the interference which will require compensation must be a physical interference with the property itself or with the right which the owner has to the legal and proper use of it, and not merely such as causes discomfort, inconvenience, annoyance, or apprehension, or even loss of business.

"It has similarly been held that the damage clause of the constitution has no application to depreciation in market value of land caused by a public improvement in close proximity thereto, where there is no physical injury to the property or impairment of any right appurtenant thereto, if the public use is not of such character as to constitute a nuisance. While the disturbance of a property owner's rights need not be a physical disturbance or direct injury of the tangible object of property rights, it must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object."

The question of whether or not there has been a taking or damaging of private property for a public use has been determined by this court to be a question of law. *Guerard v. State*, 220 N.W.2d 525 (N.D.1974). The trial court determines if the claim of damages arises because of the disturbance of a right, either public or private, which the owner enjoys in connection with his property and which gives it additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess to that sustained by the public generally. *Guerard v. State, supra.* The only function of the jury in such issues is to assess the level of damages, not to determine if the damages are compensable. *City of Minot v. Minot Highway Center, Inc.*, 120 N.W.2d 597 (N.D.1963).

The following sections of the North Dakota Century Code are pertinent in determining if the transmission facilities located on the Frolek, et al., properties interfere with a property interest vested in the Heleys and Jelineks.

Section 2–03–02, NDCC:

"Sovereignty in the space above the lands and waters of this state is declared to rest in the state, except where granted to and assumed by the United States pursuant to a constitutional grant from the people of this state."

Section 2–03–03, NDCC:

"The ownership of space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the right of flight described in section 2–03–04."

Section 2–03–04, NDCC:

"Flight in aircraft over the land and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." . . ."

In exercise of its sovereign power, the state has vested in the landowner the ownership of the space above his property subject to the right of flight. The right of any member of the general public to fly over the property of another arises only through the specific reservations contained in § 2–03–03, NDCC, and § 2–03–04, NDCC, and is subject to the restrictions on such flights contained in § 2–03–04, NDCC.

The right of a landowner to fly over property of an adjoining property owner results from the same right of flight reserved to the general public under § 2–03–04, NDCC, and is subject to the same restrictions. A landowner acquires no independent right of flight over property of an adjoining property owner simply by being an adjoining property owner. Thus a landowner acquires no interest in the air space above adjoining land other than that shared by the public in general but his land may suffer damages different in kind from damages the general public might suffer.

The appellants argued that placement of the transmission facilities on the

Frolek, et al., properties interfered with the use of air space over their property. The appellants' offer of proof sought to show the market value of their properties would be reduced as a result of the transmission facilities placed on the Frolek, et al., properties because of an interference with aerial crop spraying over the Heley and Jelinek properties. An aerial crop sprayer testified crop spraying over the Heley and Jelinek properties would not be impossible as a result of the transmission facilities on the Frolek, et al., properties, however, spraying would be more difficult as the crop sprayer would have to fly over or parallel to the facilities to spray parts of the appellant's properties.

Flights over the Heley and Jelinek properties are not obstructed by the transmission facilities. Although low flight patterns over those properties may be altered as a result of the transmission facilities on the Frolek, et al., properties, such interference results not from the use of air space over the appellants' property, but with the use of air space over the Frolek, et al., properties.

We conclude the interference for which the Heleys and Jelineks seek consequential damages is not with the use of air space over their properties but with that over the Frolek, et al., properties in which they have no interest other than that shared in common by the public.

A property owner is not entitled to compensation for consequential damages arising as a result of a disturbance or interference with an interest shared in common with the public, unless he proves the injury affected his property in a special and peculiar manner and thus is different in kind from that sustained in common by the public. If the damage differs only in degree from that suffered in common by the public, it is not compensable. *King v. Stark County, supra; Donaldson v. City of Bismarck, supra.*

The trial court sustained the objection against admissibility of appellants' offer of proof as to damages suffered as a result of the interference with aerial crop spraying, on the basis that a landowner cannot recover damages for a public improvement (transmission facilities) located on an adjoining property owner's land. A property owner's right to compensation is not so limited.

The appellants' offer of proof indicated their property may have suffered a decrease in market value as a result of a possible interference with aerial crop spraying, however, no evidence was offered as to whether or not appellants' use aerial crop spraying in their farming operations. If appellants do not aerial crop spray, or did not have a partially executed plan for aerial crop spraying, their farming operations have not been interfered with and they are not entitled to compensation. Without such a showing, appellants would fail to meet their burden of proving the injury to their property was different in kind from that shared in common by the public. The law does not allow damages based upon speculation and conjecture. Evidence of a decrease in market value as the result of an interference with a possible but nonexistent farm operation or land use is speculative and conjectural and too remote to support compensation for consequential damages in this eminent domain proceeding.

The appellants in this case should be allowed to present evidence of damages if the court determines they have suffered an injury to their property different in kind from that suffered in common by the public. They are not necessarily entitled to compensation for the full difference in the market value of their property before and after the construction of the transmission facilities, but only for the difference in market value arising as the result of injuries different in kind from those suffered in common by the public. See *Northern States Power Co. v. Effertz*, 94 N.W.2d 288 (N.D.1958).

Reversed and remanded.

ERICKSTAD, C. J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

*Guerard v. State*, 220 N.W.2d 525 (N.D. 1974), reached about the same conclusion as the majority in this case. If we are bound by precedent, I guess this result has to be correct. I participated in *Guerard* and lost. I thought the court was wrong then and I think it is wrong now. Both opinions express many correct principles of law with which I am in full agreement.

This majority opinion, citing *Guerard*, says that "the question of whether or not there has been a taking or damaging of private property for a public use has been determined by this court to be a question of law." It also says that the Heleys and Jelineks seek consequential damages for the interference with air space over the Frolek land in which they have no interest other than that shared in common by the public. That distinguishes this case from cases such as *Cummings v. City of Minot*, 67 N.D. 214, 271 N.W. 421 (1937), which rely upon a theory that the owner of land abutting a highway has an interest in that highway different from that of the public. No cases have held that private rights are violated where no rights exist.

It is my understanding that when the trial court in this case heard the offer of proof and rejected the admission of the testimony, it was in effect ruling as a matter of law that Heley and Jelinek were claiming damages from the erection of structures on land where they had no interest differing from the public interest, which is *damnum absque injuria*. See Netherton, *Selected Studies in Highway Law*, Transportation Research Board, Vol. 1, at 25. If that is a question of law as this majority opinion says it is, then there is no reason for reversing and remanding.

Just as in *Guerard*, the trial court and counsel will not know what has been done wrong or how anything should be done differently. After *Guerard* was remanded, it has rested unmolested to this day.

I do not believe that the law of eminent domain should be interpreted to say that damages caused by a project are compensable if the project interferes with an existing use but not if it interferes with a potential use.