Margaret YEGEN, Plaintiff
and Appellant,

v.

The CITY OF BISMARCK and Walter R.
Hjelle, State Highway Commissioner for
the State of North Dakota, Defendants
and Appellees.

Civ. No. 9714.

Supreme Court of North Dakota.

March 13, 1980.

Rehearing Denied April 21, 1980.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant; argued by James D. Geyer, Dickinson.

John A. Zuger, City Atty., Bismarck, for defendant and appellee City of Bismarck; argued by Mr. Zuger.

Robert E. Lane, Sp. Asst. Atty. Gen., State Highway Dept., Bismarck for defendant and appellee State Highway Com'r; argued by Mr. Lane.

ERICKSTAD, Chief Justice.

This is an appeal from a summary judgment granted in favor of the defendants. We affirm.

The plaintiff, Margaret Yegen, has owned and operated a grocery store located at 810 East Main Avenue in Bismarck, North Dakota, for over fifty years. In 1976, the defendants, the City of Bismarck and the North Dakota State Highway Department [hereinafter referred to as the City], began a project to reconstruct and improve 7th and 9th Streets in Bismarck. Seventh Street intersects East Main Avenue, one block west, and Ninth Street intersects East Main Avenue one block east of Yegen's store. Since 1976, and as part of that joint project, the City has prohibited curbside on-street parking on East Main Avenue between 7th and 9th Streets. This prohibited parking area includes the curbside in front of Yegen's grocery store. The prohibition was imposed after studies of traffic flow and volume indicated a need for an additional driving lane.

Prior to 1976, Yegen's customers generally parked their cars on the street in front of her store. Delivery trucks also parked in front on East Main Avenue, as Yegen has off-street parking space for only two cars and a delivery truck.

It is undisputed that none of Yegen's private property has been taken or used for the reconstruction and improvement of 7th and 9th Streets and the intersecting Main Avenue. All changes have taken place within the street (Main Avenue) which was dedicated to the public in 1874.

Yegen commenced an action against the City on March 9, 1979, by the filing of a summons and complaint. She contended that, as a result of the prohibition on curbside on-street parking on East Main Avenue between 7th and 9th Streets, the market value of her property had been decreased by an estimated $20,000. Yegen asserted that the "loss of access" to reasonable parking for customers or deliverymen constituted a taking of private property without just compensation.

On September 20, 1979, the City moved for summary judgment. A hearing on the motion was held October 15, 1979, and thereafter the trial court issued a memorandum opinion wherein the court concluded that Yegen's right of access to her property, i. e. her right of ingress and egress, had not been illegally affected as a result of the enactment of the ordinance prohibiting curbside on-street parking. Therefore, the trial court concluded that she had not suffered a compensable loss.

Summary judgment of dismissal of her complaint was entered on October 22, 1979, and Yegen appeals to this court from that judgment.

The issues we must determine are: (1) Was summary judgment properly granted? and (2) Did Yegen suffer a compensable injury as a result of the loss of on-street parking?

Summary judgment allows for the prompt disposition of a controversy without a trial when there is no dispute as to the salient facts or when only a question of law is involved. *Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292 (N.D.1979); *see* Rule 56, N.D.R.Civ.P. Summary judgment will be granted only if the movant demonstrates clearly that there is no genuine issue of material fact, and that he is entitled to summary judgment as a matter of law. *Boone v. Estate of Nelson,* 264 N.W.2d 881 (N.D.1978). In granting summary judgment, the court may consider the pleadings, depositions, admissions, affidavits, and interrogatories, and inferences to be drawn therefrom. *St. Paul Fire & Marine v. Amerada Hess Corp.,* 275 N.W.2d 304 (N.D. 1979).

■ "Right of access" is defined as "the right of ingress to a highway from abutting land and egress from a highway to abutting land." Section 24–01–01.1(35), N.D.C.C. The right of access consists essentially of a right to get on to and off of the street upon which one's property abuts and to travel in a reasonable manner from there to the general system of public streets.

■ This court has recognized that a property owner has a right of access to an abutting highway or street. *Filler v. City of Minot*, 281 N.W.2d 237 (N.D.1979); *Chandler v. Hjelle*, 126 N.W.2d 141 (N.D. 1964). The rights of an abutting owner to ingress and egress are private rights which cannot be destroyed or impaired without just compensation. *Cummings v. City of Minot*, 67 N.D. 214, 271 N.W. 421 (1937). However, this property right is subject to the imposition of reasonable regulations by the State in the exercise of its police powers and in the interests of public safety. *Filler v. City of Minot, supra* at 239; *Chandler v. Hjelle, supra* at 147.

■ The determination of whether or not there has been a taking or damaging of private property for a public use is a question of law. *United Power Ass'n v. Heley*, 277 N.W.2d 262 (N.D.1979); *Guerard v. State*, 220 N.W.2d 525 (N.D.1974).

"The first question for our decision is whether the court or the jury has the duty to decide whether compensable damage has been caused to the Guerard property. We hold that this is a preliminary decision to be made by the court, as a matter of law.

\*      \*      \*      \*      \*      \*

"We start with the basic proposition that some actions of governmental agencies, which incidentally affect private property, do not give rise to a right to damages. Such actions are sometimes described as being within the police power of the State.

'Generally, the rule is that where the State or its agencies in the exercise of the State's sovereign power do an act which they are authorized to do, the fact that incidental injuries may accrue to an individual does not necessarily give that person a right of action. The private right must give way to the public right, and unless the law specifically gives the right of recovery then no recovery can be had.' *King v. Stark County*, 67 N.D. 260, 271 N.W. 771 (1937)." *Guerard v. State*, 220 N.W.2d at 527–28.

A careful examination of the pleadings, depositions, affidavits, and interrogatories on record in the instant case reveals that there has been no interference with Yegen's means of ingress and egress. The City's project of reconstructing and improving 7th and 9th Streets included the elimination of curbside on-street parking between those streets on East Main Avenue, but it clearly did not involve a taking of any of Yegen's property not previously taken for the Avenue. Her right of ingress (entrance) to East Main Avenue from her property and egress (exit) from East Main Avenue to her property remains unchanged. This salient fact is undisputed. What Yegen is actually contending is that she has a property right in the free and unrestricted flow of traffic passing her premises. The factual basis of her claim for damages lies in the elimination of customer parking along East Main Avenue between 7th and 9th Streets, such parking being entirely upon public property. She seeks compensation upon the theory of inverse condemnation of her alleged property right in on-street parking, and contends that damages resulting from a loss of on-street parking are compensable. We disagree.

■ Cities have the statutory power to regulate parking and traffic on their streets. East Main Avenue is in this sense a street. Section 40–05–01(8), N.D.C.C.; *Jamestown Plumbing & Heat. Co. v. City of Jamestown*, 164 N.W.2d 355 (N.D.1969); *Dacotah Hotel Company v. City of Grand Forks*, 111 N.W.2d 513 (N.D.1961). "A city has the power to use and control the use of the entire area of a street for the benefit of the public in accordance with the powers vested in the city by statute." *Dacotah*

*Hotel Company v. City of Grand Forks, supra* at 515.

■ All courts seem to agree that if the regulation or restriction falls within the ambit of the state's or city's "police power", no compensable loss has occurred. In the proper exercise of its police power in the regulation of traffic, a city may do many things which are not compensable to an abutting property owner, such as re-routing or diverting traffic; constructing a traffic island; installing a median strip prohibiting or limiting crossovers from one lane to another; using traffic control devices; prescribing one-way traffic; placing restrictions on u-turns, left and right turns; restricting the weight, size, and speed of traffic on the street; or installing "no parking" signs. *City of Phoenix v. Wade*, 5 Ariz. App. 505, 428 P.2d 450 (1967); *State v. Gannons Inc.*, 275 Minn. 14, 145 N.W.2d 321 (1966); *Painter v. State, Department of Roads*, 177 Neb. 905, 131 N.W.2d 587 (1964); *Darnall v. State*, 79 S.D. 59, 108 N.W.2d 201 (1961); *Iowa State Highway Commission v. Smith*, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680 (1957); *see Lee v. North Dakota Park Service*, 262 N.W.2d 467 (N.D. 1978); *Guerard v. State*, 220 N.W.2d at 529; *Jamestown Plumbing & Heat. Co. v. City of Jamestown*, 164 N.W.2d at 362; 28 Am. Jur.2d, *Eminent Domain* § 205 (1966); 29A C.J.S. *Eminent Domain* § 14 (1965); 3 Nichols on Eminent Domain § 10.2211[2] (1979).

The general rule is well-established throughout the country that:

> "Interference with passage along a public way under an exercise of the police power is, of course, not compensable. Thus, the damage to an abutter is *damnum absque injuria* where traffic is diverted by the construction of a new highway, the installation of a median strip, the limitation of the mode and type of traffic, the institution of one-way traffic, the installation of curbs or guardrails, and *the regulation of access by the control of driveway permits or restrictions on parking and deliveries.*" [Emphasis added.] 2A Nichols on Eminent Domain § 6.4443[4] (1979).

■ An abutting landowner has no vested interest in the flow of traffic past his premises. A property owner has a right of reasonable ingress and egress to and from his property onto the street, but once the abutting owner is on the street to which he has free access, he is subject to all traffic regulations just as any other member of the traveling public. *State v. Williams*, 64 Wash.2d 842, 394 P.2d 693 (1964).

> "Traffic regulations, including parking while loading or unloading, are police power regulations and are not a part of an abutting property owner's vested right of ingress and egress." 64 Wash.2d at 844, 394 P.2d at 694; *see Snyder v. State*, 92 Idaho 175, 438 P.2d 920 (1968).

No person has the absolute, unqualified right to utilize a public street for parking purposes. Parking on public thoroughfares is not a right, but a privilege to be enjoyed by the public at large subject to reasonable regulations under the police power. *Department of Highways v. Capone*, 298 So.2d 94 (La.App.1974); *Billington Builders Supply, Inc. v. City of Yakima*, 14 Wash.App. 674, 544 P.2d 138 (1975). Therefore, damages which stem from changes in parking regulations on public streets are not compensable where such losses result from the exercise of police powers by a governmental agency. *Department of Highways v. Capone, supra* at 96. Losses resulting from changes in regulations governing parking are not compensable items of damage. Such damages are *damnum absque injuria* or damage without legal injury. *Cheek v. Floyd County Georgia*, 308 F.Supp. 777 (N.D.Ga.1970); *State v. Williams*, 64 Wash.2d at 644–45, 394 P.2d at 695.

Yegen relies on the early North Dakota case of *Donovan v. Allert*, 11 N.D. 289, 91 N.W. 441 (1902) for the proposition that the prohibition of parking on East Main Avenue was neither contemplated nor existing at the time the street was dedicated in 1874, and therefore, losses which result from the enactment of the new ordinance are compensable.

In *Donovan*, the defendants had been granted a franchise from the city council to

426

construct and operate a telephone exchange in the city of Langdon. The defendants proceeded to perfect such system and placed two telephone poles in the street in front of the plaintiff's lot and residence. This court determined that an abutting property owner is entitled to the beneficial use of the street subject to the rights of the public by virtue of the dedication. If the abutting owner's use of the street is obstructed for any public purpose inconsistent with the grant to the public for the use of the street, then the property owner is entitled to compensation. *Donovan· v. Allert*, 11 N.D. at 293, 91 N.W. at 443. The ultimate issue to be determined was whether or not the use of the street for telephone posts and wires was within the purposes of the original dedication to the public. More specifically, "to what public purposes were the streets originally dedicated?" *Id.*

In answering this question, we said:

"The primary use of a street or highway is confined to travel or transportation. Whatever the means used, the object to be attained is passage over the territory embraced within the limits of the street. Whether as a pedestrian, or on a bicycle, or in a vehicle drawn by horses or other animals, or in a vehicle propelled by electricity, or in a car drawn by horses or moved by electricity, the object to be gained is moving from place to place. The same idea is expressed by courts and text writers, that 'motion is the primary idea of the use of the street.'" 11 N.D. at 293, 91 N.W. at 443.

This court further said:

"The primary intention and idea of the use of the street was for travel,—moving from place to place in any way that does not interfere with the use of the street for travel in any other way. The manner or mode of travel is not restricted to those known or in use at the time of the dedication, but may be those modes of travel that are the result of modern inventions. The new modes of travel must not interfere with the property rights of the abutting owner, nor with the use of

the street in all other ways by the public, as contemplated or existing at the time of the dedication or later." 11 N.D. at 294, 91 N.W. at 443–44.

■ We believe that the prohibition on parking between 7th and 9th Streets on East Main Avenue is consistent with the primary use of the street as originally dedicated, *i. e.,* travel. Thus the change in the parking regulations does not interfere with any property right Yegen has as an abutting landowner.[1] It is within the police regulatory powers of the City to enact reasonable regulations governing parking. Although a no-parking ordinance may have a harmful effect upon a property owner and may diminish the value of the property abutting the street, that alone is insufficient to justify an action for damages. There was no taking or damaging of private property within the constitutional provisions requiring compensation therefor. *See* N.D.Const. § 14.

■ We recognize the theory of inverse condemnation as a means of enforcing the constitutional ban on uncompensated takings of private property. *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979); *King v. Stark County*, 67 N.D. 260, 271 N.W. 771 (1937). We are also aware that for purposes of recovery, it is sufficient if the alleged taking or damaging resulted from a direct physical disturbance of a public or private right enjoyed by the property owner in connection with his property. *Eck v. City of Bismarck, supra* at 199.

In the case at bar, Yegen has no vested property right in utilizing East Main Avenue for parking. She is equating her property right of ingress and egress with her alleged right of on-street parking. Parking, however, is merely a privilege to be enjoyed by the public subject to the police regulatory powers.

We realize that Mrs. Yegen may have suffered an inconvenience as a result of the prohibition against parking on East Main Avenue in front of her store. However, this inconvenience is shared in common

1. *See* authority cited on page 425 of this opinion.

with the general public. The decision to prohibit parking was neither arbitrary nor unreasonable. All injury to property resulting from the exercise of the City's police power does not necessitate compensation, particularly damages to an abutter as a result of restrictions on parking. To hold otherwise would render the City liable for remote and speculative consequences, and would open the floodgates of litigation to all who live on streets where traffic has been controlled subsequent to the original taking of the property for public purposes.

Summary judgment was properly granted. There has been no taking or damaging of private property for a public use, nor has Yegen suffered a compensable injury as a result of the loss of on-street parking.

Affirmed.

VANDE WALLE, SAND, PAULSON and PEDERSON, JJ., concur.