2017 ND 112

**David and Virginia CEYNAR,
Plaintiffs and Appellants**

v.

**TESORO LOGISTICS LP and McKenzie
County, North Dakota, a Public Cor-
poration, State of North Dakota, De-
fendants and Appellees**

No. 20160243

Supreme Court of North Dakota.

Filed 4/28/2017

Joshua A. Swanson, Fargo, ND, for plaintiffs and appellants.

Paul J. Forster (argued), Benjamin J. Sand (appeared) and Brian R. Bjella (on brief) Bismarck, ND, for defendant and appellee Tesoro Logistics LP.

Scott K. Porsborg (argued) and Preston J. Wise (on brief), Bismarck, ND, for defendant and appellee McKenzie County.

Crothers, Justice.

[¶ 1] David and Virginia Ceynar appeal from a summary judgment in favor of Tesoro Logistics LP and McKenzie County. The Ceynars argue the district court erred in holding that the lane was a "public highway" within the scope of the easement and that Tesoro Logistics and McKenzie County did not need permission to build a lane on their property. We affirm the district court's judgment in favor of Tesoro and McKenzie County.

I

[¶ 2] The Ceynars own property along a section line highway in McKenzie County. In 1982 the Ceynars' predecessor in interest granted an easement to McKenzie

County. The easement provides: "It is understood that the said land is hereby granted and conveyed for highway purposes to the use of said McKenzie County so long as the above described premises are used for a public highway." The easement expands the statutory easement from 33 feet to 75 feet from the centerline. Tesoro operates the Blue Buttes Station oil-truck offloading facility along the highway near the Ceynars' property. According to Tesoro employee, James Sanford, the County approached Tesoro regarding a safety issue caused by trucks backed up on the highway waiting to deliver crude oil to Blue Buttes Station.

[¶ 3] According to Virginia Ceynar, Tesoro approached them about obtaining a right-of-way on their property to construct a lane to Blue Buttes Station. She said Tesoro asked if they were interested in selling property to Tesoro for the lane. Virginia Ceynar alleged Tesoro offered to buy their property but they refused because the price was too low. Tesoro denies offering to buy the Ceynars' property. Following the alleged offer the Ceynars had no other communications with Tesoro.

[¶ 4] According to Sanford the County found a solution to the perceived safety issue when it discovered it owned an easement over the Ceynars' property large enough to expand the road. Tesoro and the County agreed to "[c]onstruct a truck parking lane" on the Ceynars' property. The agreement provided that Tesoro would make a one-time payment of $67,851.70 to the County for construction of the lane. Tesoro further agreed to not use the "parking lane as a permanent parking or storage area but solely for purposes of temporary truck parking during times of delayed access to the Blue Butte Station for loading and unloading operations." According to Virginia Ceynar, she discovered the lane was being constructed on their property when she was out checking on their crops.

[¶ 5] McKenzie County Road Superintendent, Michael Dollinger, contends that the lane is public property and Tesoro does not have an exclusive right to use it. Tesoro employee, Michael Blanco, explained that Tesoro does not use the lane for long-term or overnight parking but uses the lane as an exit from the highway to Blue Buttes Station and occasionally for temporary parking if there is a wait to access the station. According to Blanco, drivers who temporarily park on the lane are required to stay in their vehicle with the engine idling.

[¶ 6] After the construction and use of the lane, the Ceynars sued Tesoro and the County alleging trespass and nuisance and requesting declaratory relief. The Ceynars moved for summary judgment, arguing Tesoro and the County's use of the lane exceeds the scope of the 1982 easement. Tesoro and the County filed cross-motions for summary judgment. The district court granted summary judgment in favor of Tesoro and the County and dismissed the Ceynars' claims with prejudice. The Ceynars appeal.

II

[¶ 7] This Court's review of summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was

appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Horob v. Zavanna, LLC,* 2016 ND 168, ¶ 8, 883 N.W.2d 855 (quoting *Poppe v. Stockert,* 2015 ND 252, ¶ 4, 870 N.W.2d 187).

### III

■ [¶ 8] The Ceynars argue the district court erred as a matter of law by holding the lane was a "public highway" within the scope of the easement between the Ceynars' predecessor and the County. The Ceynars contend Tesoro and the County's use of the lane is beyond the scope of clear and unambiguous language in the easement. The Ceynars assert Tesoro and the County are not using the lane as a public highway, but instead Tesoro is using the lane "solely for purposes of temporary truck parking during times of delayed access to the Blue Butte Station for loading and unloading operations."

[¶ 9] The County and Tesoro contend the argument on appeal is different than the Ceynars' argument at the district court, and thus the argument was waived. The County and Tesoro argue the parties agreed in the district court that the scope of the easement is governed by the definitions found in N.D.C.C. § 24–01–01.1. The district court relied on the statutory definitions in ruling the lane is within the scope of the easement.

[¶ 10] We conclude the nature of the Ceynars' argument has not changed. However, our interpretation of the easement is not governed by the statutory definitions by which the district court relied and Tesoro and the County argue on appeal.

■ [¶ 11] "An easement is an interest in land consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Krenz v. XTO Energy, Inc.,* 2017 ND 19, ¶ 22, 890 N.W.2d 222 (citing *Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.,* 2011 ND 95, ¶ 8, 797 N.W.2d 770). We interpret grants of interests in land in a "like manner with contracts in general." N.D.C.C. § 47–09–11. In *Krenz* we explained our rules for interpreting contracts:

"Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone if possible. A contract must be construed as a whole to give effect to each provision, if reasonably practicable. We construe contracts to be definite and capable of being carried into effect, unless doing so violates the intention of the parties. Unless used by the parties in a technical sense, words in a contract are construed in their ordinary and popular sense, rather than according to their strict legal meaning.

"If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. Whether or not a contract is ambiguous is a question of law. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question."

2017 ND 19, ¶ 22, 890 N.W.2d 222 (quoting *Riverwood Commercial Park*, 2011 ND 95, ¶ 7, 797 N.W.2d 770).

[¶ 12] In 1982 the Ceynars' predecessor granted the County an easement "for use as a public highway so long as it shall be used for that purpose." The easement further provides, "[i]t is understood that the said land is hereby granted and conveyed for highway purposes to the use of said McKenzie County so long as the above described premises are used for a public highway."

[¶ 13] The Ceynars argue the easement limited the County's use of the property to a public highway and nothing in the easement gave the County the right to use the easement for parking. The Ceynars argue the County changed the character of the easement, materially increasing the burden by parking trucks on Ceynars' property.

[¶ 14] The extent of an easement is "determined by the terms of the grant or the nature of the enjoyment by which it was acquired." N.D.C.C. § 47–05–07; *Minnkota Power Co-op., Inc. v. Lake Shure Properties*, 295 N.W.2d 122, 127 (N.D. 1980). The use of the lane must be consistent with the purpose of the original easement for highway purposes. *See Yegen v. City of Bismarck*, 291 N.W.2d 422, 425–26 (N.D. 1980) (citing *Donovan v. Allert*, 11 N.D. 289, 91 N.W. 441, 443 (N.D. 1902)) ("The ultimate issue to be determined was whether or not the use of the street for telephone posts and wires was within the purposes of the original dedication to the public. More specifically, 'to what public purposes were the streets originally dedicated?' "); *Cosgriff v. Tri–State Telephone & Telegraph Co.*, 15 N.D. 210, 107 N.W. 525, 526 (N.D. 1906) ("The proposed use must be within the purpose of the original dedication."). If the use is inconsistent with the purpose of the original easement the

abutting landowner is entitled to compensation. *Donovan*, 91 N.W. at 443.

[¶ 15] In *Donovan* this Court held the construction and operation of a telephone line was not a proper street use consistent with the original dedication. 91 N.W. at 445. In addressing the purpose of the original dedication, this Court explained:

"The primary use of a street or highway is confined to travel or transportation. Whatever the means used, the object to be attained is passage over the territory embraced within the limits of the street... the object to be gained is moving from place to place. The same idea is expressed by courts and text writers, that 'motion is the primary idea of the use of the street.' "

*Id.* at 443.

[¶ 16] Here, the lane is consistent with the purpose of the original easement granted for highway purposes. Evidence supports that the lane was constructed to alleviate safety concerns because of congestion due to trucks waiting on the highway to access the station. It is within the County's police regulatory powers to construct a lane to regulate traffic. *See Yegen*, 291 N.W.2d 422, 425 (N.D. 1980) (discussing things in which a city may do to regulate traffic within its proper exercise of its police power). Evidence supports a finding the lane is owned and maintained by the County and open to the public. It is irrelevant that the lane is primarily used by trucks delivering to the station. 39 Am. Jur. 2d *Highways, Streets, and Bridges* § 1 (2017) ("A public road is a 'public highway' regardless of the number of people who use it if everyone who desires to do so may lawfully use it. It is the right of travel by all the world, and not the exercise of the right, which constitutes a road a public highway, and the actual amount of travel upon it is not material.").

[¶ 17] By arguing that use of the lane exceeds the scope of the easement because parking occurs on the lane, the Ceynars take a narrow view of highway and highway purposes. Streets and roads are lawfully subject, as of necessity, to "parking or standing of vehicles therein for a reasonable time and in a reasonable manner." 39 Am. Jur. 2d *Highways, Streets, and Bridges* § 340 (2017). The evidence supports the fact trucks temporarily stop on the lane when waiting to access the station. The drivers must stay in the vehicle with the engine idling if required to wait for access to the station. If we were to agree with the Ceynars' interpretation, all easements granted for highway purposes in which a vehicle temporarily stops would be beyond the scope of the original dedication. This could have a broad impact on streets in residential and commercial areas throughout the State. We conclude the present use is consistent with the scope of the easement granted for highway purposes.

### IV

[¶ 18] The Ceynars argue the County's lane construction on their property was, in essence, a taking without providing compensation and nothing in ch. 24–01, N.D.C.C., allows them to do so. The Ceynars' predecessor in interest granted the County an easement for compensation and thus this claim is without merit.

### V

[¶ 19] We affirm the district court's judgment in favor of Tesoro and McKenzie County.

[¶ 20] Daniel J. Crothers

Lisa Fair McEvers

Dale V. Sandstrom, S.J.

Benny Graff, S.J.

Gerald W. VandeWalle, C.J.

[¶ 21] The Honorable Benny Graff, S.J., sitting in place of Kapsner, J., disqualified.

[¶ 22] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.