# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 68

Renee Becker, Rick Bischof, Jacqueline
Bischof, Dr. Craig Lambrecht, Jewel
Lambrecht, Dr. Josh Rampton, Dr. Karen
Rampton, Todd Tescher, and Lindsey
Tescher, Dr. Attas Boutrous, Tim
Clausnitzer, Stacey Clausnitzer, Gary
Hanson, Darlyne Hanson, Howard Malloy,
Lori Malloy, Tony Masset, Gretchen
Masset, John Miller, Dr. Brenda Miller,
Kim Parson, Sharon Parson, John Shaffer,
Mary Shaffer, James Volk, Catherine
Volk and Dr. Josh Rampton and Dr.
Karen Rampton,                                                    Plaintiffs

      and

Dr. Attas Boutrous, Tim Clausnitzer,
Stacey Clausnitzer, Gary Hanson, Darlyne
Hanson, Howard Malloy, Lori Malloy,
Tony Masset, Gretchen Masset, John
Miller, Dr. Brenda Miller, Kim Parson,
Sharon Parson, John Shaffer, Mary Shaffer,
James Volk, Catherine Volk, Dr. Josh
Rampton and Dr. Karen Rampton,                    Plaintiffs and Appellants

      v.

Burleigh County, Lincoln Township, and
Burleigh County Water Resource District,          Defendants and Appellees

No. 20180259

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Sean T. Foss (argued) and Stephen P. Welle (appeared), Fargo, N.D., for plaintiffs and appellants.

Scott K. Porsborg (argued) and Austin T. Lafferty (appeared), Burleigh County Special Assistant State's Attorneys, Bismarck, N.D., for defendants and appellees Burleigh County and Lincoln Township.

David R. Bliss, Bismarck, N.D., for defendant and appellee Burleigh County Water Resource District.

**Tufte, Justice.**

[¶1]     Attas Boutrous and other landowners appeal from a judgment dismissing their action against Burleigh County, its Water Resource District, and Lincoln Township to halt a flood protection project in the Fox Island subdivision in Bismarck, denying their request for a preliminary injunction, dismissing their inverse condemnation action, and ordering them to pay Burleigh County and Lincoln Township $18,756.75 in costs and disbursements. Because we conclude the district court correctly applied the law and there are no genuine issues of material fact, we affirm the judgment.

I

[¶2]     The Fox Island subdivision is located in Lincoln Township ("Township") in Burleigh County ("County").  Because the Township is unincorporated and unorganized, it is governed by the Burleigh County Board of County Commissioners with respect to roads, highways, and bridges. *See* N.D.C.C. §§ 24-06-01 and 24-07-04(1). On April 5, 1994, the original owners of Fox Island dedicated the streets in the subdivision to the "public use forever":

> [The] owners and proprietors of the property shown on the annexed plat have caused that portion described hereon to be surveyed and platted as "Fox Island subdivision" to the City of Bismarck, North Dakota and do so dedicate streets as shown hereon including all sewer, culverts, water and gas distribution lines and other public utility lines, whether shown hereon or not, to the public use forever.
>
> They also dedicate easements to run with the land, for gas, electric, telephone and other public utilities or services under those certain strips of land designated hereon as "utility easements".

On the same day, the Board of County Commissioners "approved the subdivision of land on the attached plat . . . [and] accepted the dedication of all streets shown

thereon." The plat containing the dedication and County approval was recorded with the register of deeds.

[¶3]  Flood events on the Missouri River in 2009 and 2011 prompted Fox Island residents to request the Burleigh County Water Resource District ("District") to devise a flood mitigation project. The District conducted a public input hearing to consider several alternatives and eventually chose to build a levee which would be partially constructed by raising public roadways within Fox Island by one to two feet. The lead engineer and project manager for the District's proposed flood control project explained:

> The plan selected by the BCWRD, with the assistance and input from the Fox Island Homeowners Association, included roadway grade raises along Gallatin Loop, Gallatin Drive, and Far West Drive, and would tie into a larger project that was constructed performed [sic] by the City of Bismarck, which included grade raises on Tavis Road, Mills Avenue, and Riverwood Drive. Burleigh County and the City of Bismarck jointly constructed the flood control gates and pump station on the Tavis Road causeway.

[¶4]  Approximately 80 percent of the affected landowners voted in favor of creating a special assessment district for the project. On February 9, 2018, the County, on behalf of the Township, granted the District "an easement over, upon and in the land hereinafter described for the purpose of constructing and maintaining an earthen flood control levee, which includes a roadway grade raise and associated modifications, for the purposes of protecting property on Fox Island from the waters of the Missouri River."

[¶5]  On March 9, 2018, several landowners ("landowners") whose properties abut the subdivision's streets commenced this action challenging the legality of the project. They contended that the original 1994 dedication of the property only conveyed an easement to the public for travel rather than for flood control, that the landowners own fee simple title in the property to the middle of the street abutting their property, and that the County and Township overstepped their authority in granting the easement to the District. The landowners also brought a claim for inverse

condemnation and requested a preliminary injunction to halt the project from proceeding. They also moved for a temporary restraining order, which was denied. The district court granted summary judgment dismissing all of the landowners' claims and ordered the landowners to pay the County and Township $18,756.75 for their costs and disbursements.

## II

[¶6]    The landowners argue the district court erred in granting summary judgment dismissing their claims.

[¶7]    Our standard of review for summary judgments is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Dahms v. Nodak Mut. Ins. Co.*, 2018 ND 263, ¶ 6, 920 N.W.2d 293 (quoting *Pettinger v. Carroll*, 2018 ND 140, ¶ 7, 912 N.W.2d 305).

## A

[¶8]    The District argues that the district court should have denied the request for a preliminary injunction because the landowners failed to exhaust their administrative remedies. The District contends the landowners' remedy was to appeal from its decision to construct the flood project rather than to collaterally attack its decision in a later civil lawsuit.

[¶9]    "[T]he doctrine of separation of powers requires those who seek judicial review of administrative matters to first exhaust their administrative remedies." *Med. Arts Clinic, P.C. v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 296 (N.D. 1995). Generally, injunctive relief cannot be granted against public officials or entities. *See Black Gold OilField Servs., LLC v. City of Williston*, 2016 ND 30, ¶ 14, 875 N.W.2d 515. However, injunctive relief may be granted against public entities without exhaustion of administrative remedies where the plaintiff challenges the legality and validity of a decision rather than the public entity's wisdom, propriety, or correctness in making the decision. *See, e.g., id.* at ¶¶ 14-17; *Braunagel v. City of Devils Lake*, 2001 ND 118, ¶¶ 10-12, 629 N.W.2d 567; *Frey v. City of Jamestown*, 548 N.W.2d 784, 787 (N.D. 1996).

[¶10]   Here, the landowners are not challenging the wisdom, propriety, or correctness of the District's plan for constructing the flood control project. Rather, they challenge the legality of the easement granted by the County to the District for construction of the project. Consequently, the landowners were not required to exhaust their administrative remedies by appealing from the District's decision.

B

[¶11]   The landowners argue the district court erred in ruling that use of the Fox Island streets for flood protection is within the purpose of the 1994 dedication from the original landowners.

[¶12]   The landowners rely on this Court's decision in *Donovan v. Allert*, 11 N.D. 289, 91 N.W. 441 (1902), to support their argument that flood protection is not a primary use of streets. In that case, the Court held that the erection of telephone poles on streets did not fall within the purpose of a dedication of streets for public use

4

because the uses of streets were confined to travel and transportation. 11 N.D. at 293, 91 N.W. at 443. The Court explained:

> The primary use of a street or highway is confined to travel or transportation. Whatever the means used, the object to be attained is passage over the territory embraced within the limits of the street. Whether as a pedestrian, or on a bicycle, [or] in a vehicle drawn by horses or other animals, or in a vehicle propelled by electricity, or in a car drawn by horses or moved by electricity, the object to be gained is moving from place to place. The same idea is expressed by courts and text writers, that "motion is the primary idea of the use of the street."

*Id.* The landowners argue that any use beyond travel and transportation, specifically flood control, is not within the purpose of the original dedication.

[¶13]   In concluding "the raising of the road is consistent with the primary use of the dedication," the district court reasoned:

> Here, the Court finds that the streets were unambiguously dedicated . . . "*to the public use, forever.*" The primary use of a street or highway is confined to travel or transportation. *Donovan v. Allert*, 11 N.D. at 443. The raising of the streets does not change the primary use of the streets. The primary use of the streets remains travel or transportation. The secondary use is flood protection. Second or subsequent uses that are separate and distinct from the primary use does not extinguish the primary use. Therefore, the Court concludes that the raising of the road is consistent with the primary use of the dedication: public use. Furthermore, the [Court] concludes that the city's interest in the dedicated streets within Fox Island includes the right to use the ground underneath for related municipal purposes, which include to alter, widen, grade, pave or otherwise improve or regulate the use of streets. It cannot be reasonably argued that these municipal purposes are not for the benefit of the public.

[¶14]   This Court has interpreted *Donovan* to mean that the proposed use need only be "consistent" with the purpose of the original dedication for street or highway purposes. *See, e.g.*, *Ceynar v. Tesoro Logistics LP*, 2017 ND 112, ¶¶ 14-16, 894 N.W.2d 374; *Yegen v. City of Bismarck*, 291 N.W.2d 422, 425-26 (N.D. 1980); *City of Fargo v. Fahrlander*, 199 N.W.2d 30, 34 (N.D. 1972); *Cosgriff v. Tri-State Tel. & Tel. Co.*, 15 N.D. 210, 214-17, 107 N.W. 525, 526-27 (1906). Thus, in *Fahrlander* and *Cosgriff* this Court held construction of a city mall project and of telegraph and

5

telephone lines, respectively, were not consistent with the purpose of streets and highways for travel or transportation. Conversely, in *Ceynar* and *Yegen* we held that construction of a highway lane and a prohibition on street parking, respectively, were consistent with the purpose of streets and highways.

[¶15] Section 40-05-01(8), N.D.C.C., gives municipalities the power to "alter, repair, clean, widen, vacate, grade, pave, park, or otherwise improve and regulate the use of streets." Although the County is not a municipality, we believe the statute sets forth common and necessary attributes of maintaining streets regardless of the entity charged with their control. In *Kenner v. City of Minot*, 98 N.W.2d 901, 907 (N.D. 1959), this Court observed:

> When the owner of property within the city limits dedicates a portion of his property for street purposes, he consents that the public authorities may determine the grade for such street for the convenience of the public. He knows, and is presumed to have consented by such dedication of a part of his land for street purposes, that hills on such street will be leveled and cut down. He further is presumed to have consented that valleys and low spots on the street will be filled and leveled, which in some instances will result in causing the street to be higher or lower than the abutting property. The right to so improve the street for public purposes is included in his dedication of a street.

We agree with the district court that raising the grade of streets is consistent with travel or transportation, the primary use of streets.

[¶16] The landowners emphasize, however, that the purpose of the easement granted by the County to the District is for flood control rather than for travel or transportation. We do not believe the stated purpose of the easement for flood control is relevant under the circumstances. First, in his affidavit the lead engineer of the flood control project stated:

> The Fox Island Roadways were elevated such that they were at or above the Base Flood Elevation level established by FEMA (circa. May 6, 1994 Plan and Profile Drawings), when they were first built and paved, which was verified by the design surveys. A new higher based flood elevation in this location was established and effective 2014.

6

It appears the potential for flooding in Fox Island has always been a concern since the original dedication in 1994, and raising the grade of the streets would have been necessary based on the higher 2014 flood elevation. The County would have been justified in raising the grade of the streets without the 2018 easement to the District. The 2018 easement merely tied the roadway grade raise into the entire flood control project.

[¶17]   Second, the landowners argue that the purpose of flood control is not within the purpose of the original dedication for travel and transportation, and therefore the flood control project as it pertains to the streets is somehow invalid. The landowners' argument misdirects the inquiry and elevates the purpose of the easement as the controlling principle. If we were to accept the landowners' argument, the problems with the city mall project in *Fahrlander* and the construction of telephone and telegraph lines in *Cosgriff* and *Donovan* could have been avoided by simply stating that their purposes were for travel or transportation. If the additional use proposed to be accomplished through the flood control easement is consistent with the dedication of streets for travel or transportation, as it is here, it does not matter whether the stated purposes of the dedication include flood control.

[¶18]   We conclude the court did not err in ruling that raising the street grade is consistent with the scope of the original dedication for street purposes.

C

[¶19]   The landowners argue the district court erred in concluding as a matter of law that the original dedication was a statutory rather than a common law dedication.

[¶20]   In *Winnie Dev. LLLP v. Reveling*, 2018 ND 47, ¶ 8, 907 N.W.2d 413, we examined the law regulating dedications in the platting of real property:

> As a general matter:
>
>> Private land may be dedicated to public use in two ways, pursuant to statute and under the common law. Two distinctions separate the different types of dedication. First, the common law dedication operates by way of an equitable estoppel, whereas a statutory dedication

7

operates by way of grant. Second, a common law dedication usually creates a mere easement, whereas in a statutory dedication the fee of the property is in the public.

11A Eugene McQuillin, *The Law of Municipal Corporations* § 33:5 (3d ed. Supp. 2017). North Dakota has followed these general principles. Dedication arises when a private landowner sets aside land for public use. *Tibert v. City of Minto*, 2004 ND 97, ¶ 13, 679 N.W.2d 440 (citing *Brown v. Bd. of Cty. Comm'rs for Pennington Cty.*, 422 N.W.2d 440, 442 (S.D. 1988)). Dedication may be express or implied, and may be established statutorily or by common law. *Tibert*, [at] ¶ 13 (citing *Cole v. Minnesota Loan & Trust Co.*, 17 N.D. 409, 117 N.W. 354, 357 (1908)). "A statutory dedication is 'in the nature of a grant,' while a common-law dedication 'rests upon the principles of estoppel in pais.'" *Tibert*, at ¶ 13 (citing *Cole*, at 357).

> Statutory dedications are those made pursuant to the provisions of a statute. However, they are not exclusive of the common-law method.
> . . . .
> In order to make a statutory dedication of land, the procedures outlined in the applicable laws must be carefully followed, although there is authority to the contrary.

McQuillin, § 33:4 (footnotes omitted) (3d. ed. 2009).

An imperfect statutory dedication can be considered as a valid common law dedication. *Id.*

[¶21] The landowners argue that no evidence was presented that the requirements for a statutory dedication under N.D.C.C. ch. 40-50.1 were met. The landowners contend the County did not establish that the plat was in "black ink, not ballpoint ink" and that it was accompanied by "a copy of a title insurance policy or an attorney's opinion of title" as required by N.D.C.C. § 40-50.1-03. Here, the dedication was filed with the register of deeds. Relying on N.D.C.C. § 31-11-03(15), (16), and (17), this Court has held that publicly filed documents are "presumed regular and correct until shown otherwise by evidence." *Matter of Estate of Kjorvestad*, 375 N.W.2d 160, 165 (N.D. 1985); *see also Duchscherer v. Aanerud*, 216 N.W.2d 279, 284 (N.D. 1974) (where

8

record did not show whether county auditor mailed notices, the presumption that the auditor performed his official duty regularly, being uncontradicted, established that the notices were mailed). The landowners do not argue that the plat was in "ballpoint ink" or that it was not accompanied by a title insurance policy or an attorney's title opinion. They only argue the County has not proven compliance with these requirements. Because the landowners presented no evidence to contradict the presumption of regularity, we conclude their argument is without merit.

[¶22] The landowners argue the dedication did not comply with statutory requirements because N.D.C.C. § 40-50.1-05 dictates that the land intended to be used for streets "must be held in the corporate name of the jurisdiction in trust for the uses and purposes set forth and expressed and intended." The landowners argue, because the Township is unincorporated and has jurisdiction over the streets within Fox Island, the dedication cannot be in compliance with N.D.C.C. § 40-50.1-05. This argument ignores that although a township has general supervision over roads throughout the township, *see* N.D.C.C. § 24-06-01, that supervision reverts to the "board of county commissioners, if the road is in territory not organized into a civil township." N.D.C.C. § 24-07-04(1). By operation of law the County assumes the role of the Township for purposes of N.D.C.C. § 40-50.1-05.

[¶23] The streets were dedicated by way of a plat which was signed and acknowledged by the original owners of the land. We conclude the district court did not err in ruling as a matter of law that the dedication was statutory.

D

[¶24] The landowners argue the district court erred in concluding that the title transferred by the dedication was a fee simple interest and extinguished their rights in the property to the middle of the streets in Fox Island.

[¶25]   The landowners rely on *State v. Wilkie*, 2017 ND 142, 895 N.W.2d 742, to support their argument. That case involved a dispute over the jurisdiction of a university police officer to make an arrest on university property that was subject to an easement. *Id.* at ¶¶ 4, 8, 9. After interpreting a plat of the property as "dedicat[ing] the streets and alleys as an easement for public use," this Court concluded the easement did not relinquish the university's property rights of ownership, and the university officer therefore had jurisdiction to make the arrest. *Id.* at ¶¶ 11, 12, 14. Here, we have upheld the district court's ruling that the 1994 dedication was statutory. When there is a valid statutory dedication, the public does not receive a mere easement, but the fee of the property is in the public. *See, e.g.*, *Reveling*, 2018 ND 47, ¶ 8, 907 N.W.2d 413. *Wilkie* is distinguishable and does not dictate the result sought by the landowners.

[¶26]   Because the easement at issue here is fully consistent with the dedication of the streets for public use, and there has been no move to vacate the streets which may trigger the statutory reversion of the streets to the abutting landowners, we need not address the landowners' additional argument about whether they retain a contingent interest.  We conclude the district court did not err in holding that the fee title to the property is in the public.

E

[¶27]   The landowners argue the district court erred in concluding the Township or County did not violate duties as trustees by granting an easement to the District to construct the flood project. Because the easement was not inconsistent with the purpose of the 1994 dedication, the court did not err in rejecting this claim as a matter of law. We further conclude that in view of our disposition of the dedication issues, the court did not err in denying the landowners' request for a preliminary injunction because there is no "substantial probability of succeeding on the merits." *Eberts v. Billings Cty. Bd. of Comm'rs*, 2005 ND 85, ¶ 8, 695 N.W.2d 691.

F

10

[¶28] The landowners argue the district court erred in ruling their inverse condemnation action was premature.

[¶29] In *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 42, 773 N.W.2d 420, we interpreted N.D.C.C. § 32-15-23 to mean that "[t]he right to compensation, and to bring an inverse condemnation action to recover such compensation, accrues on the date the property is taken." Because we have rejected the landowners' claim that the County's easement to the District impaired any remaining interest of the landowners after the 1994 dedication, the landowners are unable to establish any taking at this time.

[¶30] We conclude the district court did not err in dismissing the inverse condemnation action as premature.

III

[¶31] The landowners argue the district court erred in awarding the County and Township $18,756.75 for their costs and disbursements because the court made no findings on the reasonableness of expert witness fees. This is not an inverse condemnation action, and the landowners have not argued the district court lacked authority to award costs and disbursements under N.D.R.Civ.P. 54 and N.D.C.C. § 28-26-06 to a condemnor. *Hager v. City of Devils Lake*, 2009 ND 180, ¶¶ 54-56, 773 N.W.2d 420 (rejecting argument that district court was precluded from taxation of costs for separate claims that happened to involve same property as inverse condemnation claim); *see also Lenertz v. City of Minot*, 2019 ND 53, ¶¶ 33-34 (holding N.D.C.C. § 32-15-32 precludes award of costs and disbursements in favor of the alleged condemnor in an inverse condemnation action).

[¶32] Under N.D.R.Civ.P. 54(e)(1), the clerk of court is required to allow costs and disbursements and insert them in the judgment. Rule 54(e)(2), N.D.R.Civ.P., provides the procedure to follow for objecting to the costs allowed:

> (2) *Objections to Costs*. Objections must be served and filed with the clerk within 14 days after notice of entry of judgment or within a longer time fixed by court order within the 14 days. The grounds for

11

objections must be specified. If objections are filed, the clerk must promptly submit them to the judge who ordered the judgment. The court by ex parte order must fix a time for hearing the objections. Unless otherwise directed by the court, the parties may waive the right to a hearing and submit written argument instead within a time specified by the court.

[¶33] The landowners did not file an objection as required under the rule and appealed instead. A party who fails to timely object to the clerk's taxation of costs under N.D.R.Civ.P. 54(e)(2) is precluded from seeking review of those costs on appeal. *See Opp v. Source One Mgmt., Inc.*, 1999 ND 52, ¶ 26, 591 N.W.2d 101. Without a timely objection, the district court was not required to make a finding on the reasonableness of expert witness fees.

IV

[¶34] It is unnecessary to address other arguments raised because they are unnecessary to the decision or are without merit. The district court correctly applied the law, and there are no genuine issues of material fact to preclude the granting of summary judgment. We therefore affirm the judgment.

[¶35]  Jerod E. Tufte
       Daniel J. Crothers
       Lisa Fair McEvers
       Jon J. Jensen
       Gerald W. VandeWalle, C.J.